**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LENDER L. "PAT" HUNTER<br>3905 Napoleon Place<br>Bowie, MD 20716,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL O. JOHANNS<br>SECRETARY OF AGRICULTURE,<br>U.S. Department of Agriculture<br>Whitten Building, Room 200A<br>1400 Independence Ave., S.W.<br>Washington, DC 20250-0100,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-00839 (RWR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT**

1.   Plaintiff Lender L. "Pat" Hunter, by and through undersigned counsel, hereby files this First Amended Complaint against Defendant Michael O. Johanns, Secretary of Agriculture, in his official capacity only, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for harms caused to Plaintiff by Defendant's unlawful race and sex discrimination and retaliation against her.  Plaintiff requests as relief an immediate cancellation and expungement of a 30-day suspension issued to her, with full back pay, interest, and benefits,

compensatory damages, appropriate record correction, declaratory and injunctive relief, and attorney's fees, costs, and expenses, in order to remedy Defendant's unlawful acts.

### Parties

2.  Plaintiff Lender L. "Pat" Hunter is a United States citizen who resides at 3905 Napoleon Place, Bowie, MD 20716. Ms. Hunter has worked for the federal government for over 20 years, and has worked for the past five years for the Farm Service Agency ("FSA") of the U.S. Department of Agriculture ("USDA").  Ms. Hunter is African American.

3.  Defendant Michael O. Johanns is Secretary of Agriculture and the head of the USDA, and as such, has ultimate authority over the actions of FSA.  Defendant is sued in his official capacity only.  His address is 1400 Independence Ave., S.W., Washington, DC 20250.

### Jurisdiction and Venue

4.  This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331. Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(d), and 1981a.

5.  This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  The most significant of

the discriminatory and retaliatory acts - a 30-day suspension - was decided by an FSA headquarters official in the District of Columbia.

## Administrative Procedures

6.  Ms. Hunter was suspended for 30 days between October 22 and November 21, 2005.  She filed an appeal of the suspension with the U.S. Merit Systems Protection Board ("MSPB") challenging the suspension as discriminatory and retaliatory on November 1, 2005 (Docket Number PH-0752-06-0087-I-1).  On March 3, 2006, an administrative judge of the MSPB, without holding a hearing, issued a decision affirming Ms. Hunter's suspension. The MSPB decision became final on April 7, 2006, and Ms. Hunter filed her initial Complaint within 30 days of the MSPB final decision.  Ms. Hunter also filed Equal Employment Opportunity ("EEO") complaints with the Defendant on May 25, August 10, and October 12, 2005, seeking redress for a hostile work environment (her fourth EEO complaint of October 24, 2005, was withdrawn on November 1, 2005).  Ms. Hunter is raising in this Complaint all her pending EEO complaint issues, since 180 days have expired without a resolution of those issues.

## Facts

7.   Ms. Hunter is a GS-13 Executive Officer in FSA, USDA,

3

serving in the Officer position for the past five years. Currently, she is deployed on military duty with the U.S. Air Force. She has been a federal employee for over 20 years.

   8.   Ms. Hunter was discriminated against on the basis of her race and sex and/or retaliation for filing EEO complaints and/or opposing discriminatory practices as set forth below in paragraphs 9 - 27 below.

   9.   Ms. Hunter was discriminated and retaliated against when, on October 20, 2005, she received a 30-day suspension from John Chott (white), Assistant to FSA's Deputy Administrator for Field Operations, for her alleged negligence in performance of her duties and alleged failure to follow supervisory instructions.  This suspension is discriminatory because Ms. Hunter's fellow white employees who engaged in serious misconduct on the job were either not disciplined or receive minimal discipline. The suspension is also discriminatory and retaliatory because the charges in the suspension notice misconstrue Ms. Hunter's performance at work.  The suspension notice alleges that Ms. Hunter was negligent and failed to follow supervisory instructions, when the facts show that neither allegation is true.

   In fact, Ms. Hunter has proven to be a good and effective

employee during her five years with the Agency. In September of 2003, she was promoted from the GS-12 grade level to the GS-13 grade level. During a certain period of time, Ms. Hunter received two cash awards and a quality step increase in recognition of her good work. These promotions prove that Ms. Hunter performed her duties in a satisfactory or better manner.

10. The Defendant's charge that Ms. Hunter was negligent in the performance of her duties was based on six specifications. In none of these cases was Ms. Hunter actually negligent, as set forth in paragraphs 11-18 below.

11. The first specification regarding Ms. Hunter's alleged negligence is that she failed to timely process a relocation request for new FSA employee Diane Drabish (white). Relocation requests are typically processed by Ms. Hunter's assistant, Carolyn Prince. In this case, Ms. Hunter assumed the responsibility to do so when her assistant was out of the office on sick leave. Until that point, the request had not been processed because Ms. Drabish had repeatedly stated that she was not ready to relocate. Ms. Hunter processed the request on June 24, 2005, within one month of assuming responsibility for it. Until she received her suspension notice neither Ms. Hunter's supervisor, Elizabeth Anderson (white), nor Ms. Drabish complained about the

processing of the relocation request. Ms. Hunter's performance was not negligent.

    12. The second specification alleged is that Ms. Hunter negligently authorized an inappropriate promotion and within-grade increase for Ms. Drabish. In fact, Ms. Hunter did not authorize a promotion for Ms. Drabish; Ms. Hunter in fact did the exact opposite. She received the promotion paperwork from her FSA colleagues, Thomas Long and Alan Young (both white). After her initial evaluation showed Ms. Drabish not yet eligible for promotion, Ms. Hunter informed Farm Loan Chief Cheryl Carpenter that the promotion needed to be reconsidered. The only basis for this negligence charge is a Post-it note indicating the presumed date of promotion that Ms. Hunter attached to the Drabish promotion form for her own use upon first receiving it. Not only was Ms. Hunter not negligent, she prevented an invalid promotion from occurring.

    13. The complaint about Ms. Hunter's approval of a within-grade increase for Ms. Drabish refers to a small error in inputting personnel data made by Ms. Hunter's assistant. As soon as this error was discovered, after Ms. Drabish's first erroneous pay check (a $36 pay increase), FSA's Kansas City Office was contacted to correct the error. Ms. Hunter did not

make the error, and no irreparable harm occurred as a result of it. She did not act negligently.

14. The third specification alleged is that Ms. Hunter negligently failed to bill the County offices of Rural Development and the Natural Resources and Conservation Service for postage and phone usage. This specification is incorrect. The first error in the specification is the allegation that these two County offices owed FSA over $80,000 for postage and phones. In fact, the total was half that, approximately $41,000. The second error in the Agency's specification is that Ms. Hunter was responsible for billing for phone usage. She has never had this responsibility; phone bills are processed by FSA's Kansas City Office.

15. In addition, Ms. Hunter was not negligent in processing the billing for postage. The alleged negligence occurred following a significant change in billing procedure by the Kansas City Office. Following the change, Ms. Hunter worked with the Kansas City Office to process the billing through the new system and to accommodate her increased workload, which required quarterly billing based upon calculated costs, rather than an annual review of costs reported. The delay in billing was not negligence, but the result of a new, complex billing

system.

16. The fourth specification alleged is that Ms. Hunter was negligent in processing a relocation request for Alison Lenz (white). As with Ms. Drabish's relocation request, Ms. Hunter undertook responsibility for doing so because her assistant was out of the office on sick leave. After meeting with Ms. Lenz, Ms. Hunter realized that the details of the request were beyond her area of expertise, as processing relocation requests was not within the scope of her normal duties. In order to ensure the request was processed properly, Ms. Hunter consulted with the Agency's Washington, D.C. Office, which instructed her to backdate the request to the date that Ms. Lenz began her employment. The specification suggests that this backdating was negligent, when in fact Ms. Hunter did so at the direction of relocation experts. (FSA has a practice of backdating documents.) Neither Ms. Hunter's consultation with the Washington D.C. Office, nor her processing of the relocation request was negligent.

17. The fifth specification alleged is that Ms. Hunter negligently failed to send bills to the County offices of Rural Development and Natural Resources and Conservation in a timely manner. In fact, Ms. Hunter was not negligent in processing

either of the bills (February 2005 and March 2005) referenced in her suspension notice.  The February 2005 bill was not received by Ms. Hunter's office until May 16, 2005, by which time the County office had already paid the monthly rent.  Ms. Hunter received the March 2005 bill on April 25, 2005, and forwarded it to the County office, which received it by May 24, 2005, within the 30-day period permitted for processing.  These dates are shown by the time stamps on the bills, which supervisor Elizabeth Anderson ignored when she accused Ms. Hunter of negligence.

    18.  The sixth specification alleged is that Ms. Hunter negligently failed to notify Elizabeth Anderson about a furniture authorization request.  Ms. Hunter did not process the furniture authorization request, because Ms. Anderson had previously instructed her not to process any further requests due to a lack of funds.  This allegation of negligence by Ms. Anderson is contrary to the explicit instructions given to Ms. Hunter by Ms. Anderson, herself.

    19.  Defendant's second charge that Ms. Hunter failed to follow supervisory instructions was based upon two specifications.  In neither of these incidents, did Ms. Hunter actually fail to follow instructions.

20. The first specification alleged is that Ms. Hunter failed to retrieve postage billing records requested by Elizabeth Anderson. Upon receiving the request, Ms. Hunter emailed Ms. Anderson to tell her that due to her increased workload as a result of her assistant's sick leave, she would not be able to retrieve the records that very day. Ms. Anderson promptly responded, both with an email and a handwritten note, that Ms. Hunter no longer needed to retrieve the records. Ms. Hunter did not fail to follow Ms. Anderson's instructions by not retrieving the billing records.

21. The second specification alleged is that Ms. Hunter inappropriately signed a memo authorizing the temporary hire of an employee. In fact, Ms. Hunter signed this memo on Elizabeth Anderson's behalf while Ms. Anderson was out of the office. Prior to signing, Ms. Hunter called Ms. Anderson to confirm that she should do so, and Ms. Anderson instructed her to sign the memo. The fact that Ms. Anderson later changed her mind and determined that the temporary hire was inappropriate does not mean that Ms. Hunter failed to follow her instructions by signing the memo, doing as Ms. Anderson specifically directed her.

22. Ms. Hunter was discriminated against, not only because

her suspension was an excessive response to the charges against her, but because Ms. Anderson did not similarly discipline other employees, all of whom are white (and without EEO history) for their proven misconduct. Specifically, four white employees, Linda Slaccum, George Turner, Thomas Long, and Alan Young, received little or no disciplinary action for their improper acts at work.

23. Ms. Slaccum, the County Office Executive Director for Queen Anne's County, acted outside the scope of her authority by obligating the USDA to a $12,000 contract for phone and computer wiring. County Office Executive Directors are not permitted to contract directly with vendors. Moreover, she did not comply with the transparency requirements for bid solicitations. Supervisor Elizabeth Anderson never disciplined Ms. Slaccum for this misconduct.

24. George Turner is the Agency's GS-13 District Director for District II in the State of Maryland. He authorized a farm loan in excess of $100,000 to a borrower whose property did not meet the eligibility requirements. In response to this error, the National Office sent a letter to Elizabeth Anderson requesting that the funds be recovered and that the individual who authorized the payment of the loan be disciplined. Ms.

Anderson never disciplined Mr. Turner for his misconduct.

25. Mr. Long is the Agency's GS-13 District Director for District I in the State of Maryland. Mr. Young is a GS-12 Farm Loan Manager in the Agency's Carroll County office. Mr. Long and Mr. Young served on an interview panel to hire new employees in October of 2004. They both acted unethically while on the panel by skewing their ratings of the interviewees in favor of one particular applicant. Mr. Long and Mr. Young cheated by examining the scores for the other interviewees to attempt to give their favored interviewee a higher rating. Ms. Anderson's only response to this misconduct was to issue letters of counseling to Mr. Long and Mr. Young.

26. The Agency engaged in a clear pattern and practice of discrimination in which African Americans employees were subjected to harsh and less favorable treatment than similarly situated white employees. In 2002, two African American employees were fired by John Chott, the same white individual who suspended Ms. Hunter for 30 days on trumped up charges. One African American employee was a Farm Loan Specialist in Delaware named Sahr Abu, and the other was an intern in Delaware named Damien Alston. Ms. Hunter was the Administrative Officer for the Agency's Maryland and Delaware offices at the time. Mr. Abu

was fired for alleged poor performance, and Mr. Alston was fired allegedly for two unauthorized absences. However, these firings were done not according to proper Agency procedures even though Ms. Hunter requested adherence to the required procedures.  She suffered retaliation for her insistence that those actions be done appropriately.  During her five years of employment at the Agency's Maryland (and Delaware) office, Ms. Hunter and the two African American employees mentioned above were the only ones to suffer such major disciplinary actions at that office.  White employees were not subject to such disciplinary actions in response to their negligence or misconduct the whole time of Ms. Hunter's employment.

    27. Elizabeth Anderson, Ms. Hunter's white supervisor, was not disciplined for her wrongful conduct on a number of occasions.  In one case, Ms. Anderson failed to abide by her supervisor's instruction by participating in the selection process for a candidate for employment even though she was informed by her supervisor, John Chott, that her job function as a State Executive Director (SED) required her not to be involved.  In another case, Ms. Anderson failed to conduct final performance appraisals for her employees even though she was required to do so as part of her job description.  She also made an inappro-

priate comment about an Asian American candidate. In that case, she said words to the effect that the Asian American candidate might face language difficulties because the position was located in an area with no Asian American farmers.

28. In addition, Ms. Anderson acted inappropriately when she revealed to George Turner, who was not in Ms. Hunter's chain of authority, the details of a letter Ms. Hunter sent regarding Ms. Slaccum (white), who had exceeded her authority by obligating the government to a contract. Such conduct by Ms. Anderson created a hostile work environment for Ms. Hunter. Ms. Anderson was never reprimanded or otherwise disciplined for her actions.

29. In addition to the incident mentioned above, Tom Long did not implement the instructions of his supervisors and failed to perform his duties on a number of occasions. In one case, Mr. Long failed to conduct a mid-year performance appraisal for two employees even though he was instructed to do so by Ms. Anderson. In another case, Mr. Long was late in filing a lease agreement form. Mr. Long was never reprimanded or otherwise disciplined for these omissions.

30. Another example of white employees being treated more favorably than African American employees is illustrated in a

case involving Ms. Connie Byler-HSU (white) being absent without leave (AWOL) around the same time Damien Alston (African American) was reprimanded and terminated for the same offense. However, unlike Mr. Alston, Ms. Byler-HSU was not reprimanded or otherwise disciplined, much less fired.

31. Ms. Hunter had to continuously work in a hostile work environment as there were many incidents where her co-workers and supervisors were hostile or rude to her. In one case, Mr. John Chott hung up the phone on Ms. Hunter after shouting at her in response to a request she made to him. In another case, an employee named Janice Landers saw the need to apologize to Ms. Hunter due to Ms. Landers's rude behavior towards her.

32. Two witnesses support many of Ms. Hunter's facts. Mr. Clarence J. Snyder agrees that Ms. Hunter was ignored and excluded in the office, that other employees were disrespectful to her, and that other missions were provided with staff increases except for Ms. Hunter's administrative office. Ms. Elaine Greer agrees that white employees received more favorable treatment than Ms. Hunter, that Elizabeth Anderson routinely ignored and excluded Ms. Hunter, and that the white employees were provided with staff increases while Ms. Hunter's repeated requests for support were denied.

33. Ms. Hunter engaged in protected activity by filing three EEO complaints against Defendant on May 25, August 10, and October 12, 2005, seeking redress for a hostile work environment, and Defendant suspended her for 30 days soon thereafter.

34. It is clear from the severity of the adverse action taken against Ms. Hunter — a 30-day suspension — that Defendant intended for her to resign from her FSA employment; Ms. Hunter had never previously been disciplined.

### Causes of Action

35. Based upon the facts described above, Defendant unlawfully discriminated against Plaintiff Lender L. "Pat" Hunter on the basis of her race (African American) and sex (female) by subjecting her to an adverse personnel action, i.e., a 30-day suspension, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e.

36. Based upon the facts described above, Defendant unlawfully retaliated against Plaintiff Lender L. "Pat" Hunter on the basis of her prior protected EEO activity by subjecting her to an adverse personnel action, i.e., a 30-day suspension, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e.

**Relief Requested**

37. Plaintiff requests the following relief:

    a.   Immediate cancellation and expungement of the 30-day suspension and all related documents;

    b.   Full back pay, with interest, and benefits for the period of Plaintiff's suspension;

    c.   Maximum compensatory damages to which Plaintiff is entitled after proof at trial up to the maximum of $300,000;

    e.   Appropriate record correction consistent with the facts of this case and the above requested relief;

    f.   An Injunction enjoining the Defendant from discriminating or retaliating against any FSA, USDA employee, including Plaintiff;

    g.   An injunction prohibiting a continuing hostile working environment subject to proof at trial, against Ms. Hunter.

    h.   The reasonable attorney's fees at prevailing market (_Laffey_) rates, costs, and expenses of this action and previous administrative actions and complaints; and

    i.  Such other relief as the Court deems just and appropriate.

## Jury Trial

38. Plaintiff requests a trial by jury on all issues that are triable by jury.

                                          */s/ Joseph D. Gebhardt*
                                        JOSEPH D. GEBHARDT
                                            (DC Bar No. 113894)
                                        CHARLES W. DAY, JR.
                                            (DC Bar No. 459820)
                                        VALENCIA R. RAINEY
                                            (DC Bar No. 435254)
                                        GEBHARDT & ASSOCIATES, LLP
                                        1101 17th Street, N.W.
                                        Suite 807
                                        Washington, DC 20036-4716
                                        (202) 496-0400

September 8, 2006            Attorneys for Plaintiff