## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LENDER L. "PAT" HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0839 (RWR) |
| | ) | |
| MICHAEL O. JOHANS | ) | |
| SECRETARY OF AGRICULTURE | ) | |
| U.S. Dept. of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————— | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER

Plaintiff Lender L. "Pat" Hunter, by and through under-signed counsel, hereby opposes Defendant's Motion to Dismiss, or in the Alternative, Transfer (hereinafter "Motion"), and in support of her Opposition files the attached Memorandum of Law, setting forth Plaintiff's arguments and reasons why Defendant's Motion should be denied.

Respectfully submitted,


_____/s/_____

JOSEPH D. GEBHARDT
    (D.C. Bar No. 113894)
MARK A. DANN
    (D.C. Bar No. 484523)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

December 1, 2006          Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LENDER L. "PAT" HUNTER,      )
                             )
            Plaintiff,       )
                             )
        v.                   )    Civil Action No. 06-0839 (RWR)
                             )
MICHAEL O. JOHANS            )
SECRETARY OF AGRICULTURE     )
U.S. Dept. of Agriculture,   )
                             )
            Defendant.       )
_____ )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER

### I. INTRODUCTION

Ms. Hunter filed her Complaint and First Amended Complaint ("Complaint") seeking relief from Defendant's unlawful employment discrimination against her on the basis of her race (African American) and sex (female), and unlawful retaliation against her, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Ms. Hunter has been a dedicated federal employee for more than 20 years and has worked for the U.S. Department of the Agriculture ("USDA") Farm Service Agency ("FSA") for the last five years. Nevertheless, as set forth in her Complaint, Defendant discriminated and retaliated against Ms. Hunter when it suspended her for 30 days and subjected her to a hostile work environment. Defendant's actions culminated in the 30-day suspension — the central issue in Ms.

Hunter's case — and that suspension was issued to her by John W. Chott, Jr., Assistant to the Deputy Administrator for Field Operations, a USDA management official whose office is located in the USDA headquarters in Washington, D.C. Defendant concedes this fact. <u>See</u> Mot. at 10 ("The decision to approve the 30-day suspension of the plaintiff in October of 2005 was made by Mr. John W. Chott, Jr., Assistant to the Deputy Administrator for Field Operations, a management official whose office is located in the USDA headquarters in Washington, D.C.")

Contrary to Defendant's Motion, Ms. Hunter's Complaint was properly filed in this Court because the main unlawful employment practice challenged in this case — the suspension — was committed in the District of Columbia. <u>See</u> 42 U.S.C. § 2000e5 (f)(3). Accordingly, Defendant's arguments in support of dismissal or transfer are misguided, Defendant's Motion should be denied, and this case should be allowed to proceed to discovery and trial.

## II. <u>BACKGROUND</u>[1]

_____

[1] The background of this case as described in Defendant's Motion completely ignores the jurisdictional statement contained in Plaintiff's Complaint and selectively omits significant portions of the procedural history of Plaintiff's suspension. For example, it contains no reference to Ms. Hunter's replies to the proposed suspension. It omits all of the actions taken by both parties in the District of Columbia prior to Ms. Hunter's suspension taking effect; stating instead, simply, that Mr. Chott's office is located in the USDA headquarters in Washington, D.C. <u>See</u> Mot. at 10. For these reasons, Plaintiff avers this Background and

On August 8, 2005, Ms. Hunter's first-level supervisor, Elizabeth Anderson, Maryland State Executive Director, proposed to suspend her for 30 days for alleged negligence in the performance of her duties and alleged failure to follow supervisory instructions. <u>See</u> Complaint at ¶ 9.  This document was merely a proposed suspension. <u>See</u> Letter from Elizabeth Anderson to Pat Hunter (Aug. 8, 2005) ("notice of <u>proposed</u> disciplinary suspension" (emphasis added)), copy attached as Exhibit 1.  The notice was, by its own words, merely a "proposed adverse action." <u>See</u> Ex. 1; <u>see also</u> <u>id</u>. ("A final decision will not be made on this matter until your ... replies have been received and considered").  Ms. Anderson ordered Ms. Hunter to direct any future communication to John W. Chott, Jr., Assistant to the Deputy Administrator for Field Operations, a management official whose

---

accompanying Exhibits to shed needed light on these events.

Plaintiff files Exhibits in support of her Opposition only to further reinforce the jurisdictional statement already contained in her Complaint, which clearly stated that "[t]he most significant of the discriminatory and retaliatory acts - a 30-day suspension - was decided by an FSA headquarters official in the District of Columbia." <u>See</u> A. Complaint at ¶ 5.  The Exhibits attached hereto, all of which were part of the administrative record of this case, <u>see</u> Report of Investigation Case No. FSA-2005-01116, merely bolster this statement. The Court may consider "document[s] integral to or explicitly relied upon in the complaint ... without converting the motion into one for summary judgment." <u>See</u> <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996).  Similarly, it may properly take judicial notice of matters in prior cases. <u>See</u> <u>Baker v. Henderson</u>, 150 F. Supp.2d 17, 19 n.1 (D.D.C. 2001); <u>Himmelman v. MCI Communications</u>, 104 F.Supp.2d 1, 3 (D.D.C. 2000).

3

office is (and was) located in the USDA headquarters in
Washington, D.C. <u>See</u> Ex. 1; Mot. at 10. <u>See also</u> Ex. 1 ("You
will be notified in writing of the final decision."). According
to these statements by Defendant, Ms. Hunter's suspension would
not take effect until several subsequent events had transpired
in the District of Columbia (D.C.).

On September 1, 2005, Ms. Hunter filed a written reply to
the proposed suspension with Mr. Chott, by letter addressed to
his office in D.C. <u>See</u> Letter from Pat Hunter to John W. Chott,
Jr. (Sep. 1, 2005), copy attached as Exhibit 2. <u>See also</u> Mot.
at 10.  In this reply, Ms. Hunter responded to Ms. Anderson's
allegations and petitioned Mr. Chott not to suspend her. <u>See</u> Ex.
2.  On October 4, 2005, Ms. Hunter also sent a second letter to
Mr. Chott, also addressed to his office in DC, in which she com-
plained about "the continuous stressfully working environment
being created by Ms. Anderson." <u>See</u> Letter from Pat Hunter to
John W. Chott, Jr. (Oct. 4, 2005), copy attached as Exhibit 3.

While working from his office in D.C., Mr. Chott reviewed
Ms. Hunter's written reply, and in his words "carefully reviewed
the rest of the entire record" relevant to her proposed
suspension. <u>See</u> Memorandum to Pat Hunter from John W. Chott, Jr.
(Oct. 11, 2005), copy attached as Exhibit 4.  In an October 11,

2005 memorandum prepared by Mr. Chott in his office at 1400 Independence Avenue, S.W., Washington, D.C., he stated to Ms. Hunter: "It is my decision that you will be suspended for 30 calendar days." See Ex. 4 (note the corresponding letterhead). In fact, October 11, 2005, Mr. Chott not only stated his intention to suspend Ms. Hunter, but he tried to induce her to resign from USDA. See Ex. 4 ("If you do not resign, the 30-day suspension will be put into effect").

On October 19, 2005, Ms. Hunter sent a letter to Mr. Chott, addressed to his office in D.C., which took umbrage with his "extremely drastic and pejorative" decision. See Letter from Pat Hunter to John W. Chott, Jr. (Oct. 19, 2005), copy attached as Exhibit 5. By letter dated October 13, 2005, Ms. Hunter requested a face-to-face "verbal meeting" with Mr. Chott, which later took place in his office in D.C. See Letter from Pat Hunter to John W. Chott, Jr. (Oct. 13, 2005), copy attached as Exhibit 6.[2]

On October 18, 2005, Ms. Hunter and Mr. Chott met in person to discuss the proposed suspension. See Ex. 7. This meeting

---

[2] Mr. Chott previously offered to have such a meeting in a September 5, 2005 email (presumably, sent from his office in D.C.) See Ex. 6. Mr. Chott communicated with Ms. Hunter about their meeting during a telephone conference on October 17, 2005 (again, presumably, speaking from his office in D.C.). See Letter from John W. Chott, Jr. to Pat Hunter (Oct. 20, 2005), copy attached as Exhibit 7.

took place in Mr. Chott's office in D.C. <u>See</u> Ex. 7.  Moreover,

Mr. Chott considered this meeting to be Ms. Hunter's "oral

reply" to the proposed suspension, and as such, it was a

critical incident that bore important significance.  Ms. Hunter

was represented during her oral reply in D.C. by Joe N. Kennedy,

a professional mediator.[3]  Ken Nagel, a USDA employee assigned

to the national headquarters in D.C., was in attendance at the

oral reply. <u>See</u> Ex. 7.[4]

   As stated above, in Mr. Chott's words, he "carefully re-

viewed" the records related to Ms. Hunter's proposed suspension.

<u>See</u> Ex. 4. <u>See also</u> Ex. 1 ("Any replies ... will be given full

consideration").  He also claims to "have carefully considered"

Ms. Hunter's written reply and "all factors raised" therein, as

well as all of the Douglas Factors. <u>See</u> Ex. 7 (citing <u>Douglas</u>

---

[3] It should be noted, that Ms. Hunter is represented by a law firm, whose sole office is located in D.C.  Also, it is likely that much of the documentation prepared by USDA relevant to the suspension was drafted by the Agency's attorneys and human resources personnel, who are all located in the USDA's headquarters in D.C.

[4] While Defendant's Motion tries to limit the list of potential witnesses to those explicitly identified in the Complaint, <u>see</u> Mot. at 6, it is clear from Mr. Nagel's attendance at this meeting that he is a possible witness.  Moreover, the USDA's own administrative record of this case contains several additional references to D.C.  For example, it contains the witness statement of Clarence J. Snyder, III, a USDA employee assigned to the USDA headquarters in D.C., who observed Ms. Anderson take many discriminatory actions in his capacity as Civil Rights Coordinator. <u>See</u> Witness Affidavit, copy attached as Exhibit 8. <u>See also</u> Complaint at ¶ 16 (disputing Specification Four of the suspension because "Ms. Hunter consulted with the Agency's Washington, D.C. Office, which instructed her to backdate the request...").

v. Veterans Admin., 5 M.S.P.R. 280 (1981)).  Presumably, Mr.
Chott's self-professed, in-depth deliberative process took place
while he was working in his USDA office in D.C.  Regardless, it
is undisputed that on October 20, 2005, in a letter prepared by
in his office in D.C., Mr. Chott suspended Ms. Hunter for 30
days. See Ex. 7 ("It is my decision that you be suspended from
duty and pay for a period of thirty (30) calendar days
commencing October 22, 2005").

## IV. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a
court will dismiss or transfer a case if venue is improper or
inconvenient in the plaintiff's chosen forum.  When reviewing
a motion for improper venue this Court must accept Plaintiff's
"well-pled factual allegations regarding venue as true, draws
all reasonable inferences from those allegations in [her] favor,
and resolves any factual conflicts in [her] favor." See Darby
v. Dep't of Energy, 231 F. Supp.2d 274, 276 (D.D.C. 2002).  To
overcome the presumption in favor of the plaintiff, a defendant
must present facts sufficient to defeat the plaintiff's venue
assertions. See 2215 Fifth St. Assoc. v. U-Haul Int'l, 148 F.
Supp.2d 50, 54 (D.D.C. 2001).  "Courts can determine venue by
applying a 'commonsense appraisal' of events having operative

significance." See Darby, 231 F. Supp.2d at 276 (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). Generally, a plaintiff's choice of forum should not be disturbed. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981).

### III. ARGUMENT

**A. The Motion to Dismiss Must Be Denied Because the Unlawful Employment Practice Occurred in the District of Columbia.**

Venue under Title VII is proper in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." See 42 U.S.C. § 2000e-5(f)(3). It is evident from the facts of this case that the central employment practice at issue — Ms. Hunter's 30-day suspension — took place in D.C. Ms. Hunter's written reply to the proposed suspension was filed in D.C. Her oral reply took place in D.C. Most importantly, the decision to suspend Ms. Hunter was made by Mr. Chott, while he was working at USDA headquarters in D.C. This fact is not disputed by Defendant. See Mot. at 10. Mr. Chott reviewed the proposed suspension, all of the corresponding records, all of Ms. Hunter's responses (written and oral), and made the final decision to suspend Ms. Hunter for 30 days in D.C. Despite Defendant's claims to the contrary, these multiple contacts with D.C. are not "minimal and coincidental." See Mot. at 10.

### 1. Mr. Chott Suspended Ms. Hunter in D.C. and the Proposed Suspension Itself Was Not an Adverse Employment Action.

Defendant claims that D.C. is not the proper venue because Ms. Hunter's proposed suspension and elements of her hostile work environment claims occurred in Maryland. See Mot. at 4. However, a proposed suspension is not an adverse employment action. Accordingly, venue is proper in this Court since D.C. is the location in which the adverse employment action took place. See 42 U.S.C. § 2000e-5(f)(3) (venue under Title VII is proper in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed").

Under Title VII, federal employees "must show that they have suffered an adverse personnel action in order to establish a prima facie case under the McDonnell Douglas framework." Brown v. Brody, 199 F.3d 446, 455 (D.C. Cir. 1999). In the D.C. Circuit, "an employee suffers an adverse employment action if [s]he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing Brown, 199 F.3d at 457). When conducting this inquiry, courts focus on "ultimate

employment decisions such as hiring, granting leave, discharging, promoting, and compensating ... [and not] interlocutory or mediate decisions having no immediate effect upon employment conditions." Taylor v. FDIC, 132 F.3d 753, 764 (D.C. Cir. 1997) (citations omitted). Consequently, the touchstone of an adverse employment action is the presence of tangible harm to the employee, not simply a proposed action. See Hussain v. Principi, 344 F. Supp.2d 86, 95-96 (D.D.C. 2004).

This inquiry "calls for a comparative judgment: what was the [employee's] situation immediately before the alleged adverse personnel action, and what was the situation after it?" Currier v. Postmaster Gen., 304 F.3d 87, 88 (D.C. Cir. 2002). Unless the contested action adversely affected the employee's pay, benefits, job responsibilities or produced a similar harm, it is not an adverse employment action. See Forkkio, 306 F.3d at 1131. Thus, the mere fact that a supervisor proposes to suspend a federal employee does not necessarily mean she has been subjected to an adverse employment action. See id.; Mitchell v. Yates, 402 F. Supp.2d 222 (2005) (noting a proposed suspension did not have any adverse impact on the terms and conditions of his employment). Similarly, "an unrealized risk of a future adverse action, even if formalized, is too ephemeral

10

to constitute an adverse employment action." <u>Russell v. Principi</u>, 257 F.3d 815, 819-20 (D.C. Cir. 2001).[5] Thus, to rise to the level of an adverse personnel action, the contested action must produce tangible harm that alters the employee's conditions of employment. See <u>Currier</u>, 304 F.3d at 88-89.

Here, Defendant's own documents state that Ms. Anderson's notice to Ms. Hunter was only a "proposed adverse action." <u>See</u> Ex. 1. Ms. Hunter could not file her claim until the proposed suspension was "received and considered", and decided by Mr. Chott, all of which took place in D.C. <u>See</u> Ex. 1 ("A final decision will not be made on this matter until your ... replies have been received and considered"). It would not have been enough for Ms. Hunter to allege that USDA proposed to suspend her. <u>See</u> <u>Forkkio</u>, 306 F.3d at 1131. The only adverse personnel action taken by Defendant of Plaintiff was the 30-day suspension, and that took place in D.C. <u>See</u> Ex. 7 ("It is my [Mr. Chott's] decision that you be suspended from duty and pay for a period of thirty (30) calendar days commencing October 22, 2005"). Neither Ms. Anderson's proposal to suspend nor the

---

[5] The logic of the prudential standing requirement is analogous. <u>See</u> <u>Roshan v. Smith</u>, 615 F. Supp.901, 905 (D.D.C. 1985) ("[W]here a plaintiff seeks to rely on threatened as opposed to existing injury [for standing purposes], the plaintiff must demonstrate that the injury to him would be immediate, concrete and specific, rather than merely conjectural and hypothetical.").

11

facts leading up to the proposed suspension satisfy the standard for an adverse employment action.

To begin with, the proposed suspension can not properly be characterized as a "decision", as no final decision was made until Mr. Chott decided to suspend Ms. Hunter. See Ex. 1 ("You will be notified ... of the final decision"). Moreover, even if it could be considered in some way as a "decision," no tangible harm to Ms. Hunter stemmed from it until she was actually suspended. Her pay, benefits, and job responsibilities remained constant throughout; the conditions of her employment the day after the proposed suspension were the same as the day before it. See Currier, 304 F.3d at 88. While Ms. Hunter may argue that the individual decisions that led to the proposed suspension fostered "materially adverse consequences affecting ... [her] future employment opportunities," Forkkio, 306 F.3d at 1131, at the time these precursory actions occurred, they posed only "an unrealized risk of a future adverse action [that was] too ephemeral to constitute an adverse employment action." Russell, 257 F.3d at 819-20.

## 2. The Final Suspension Decision Was a Deliberative Process.

The suspension of a federal employee is considered "a major adverse action." See 38 U.S.C. § 7461(c)(2); Harding v. Veterans

<u>Admin.</u>, 448 F.3d 1373, 1377 n. 1 (Fed. Cir. 2006). Moreover, both Defendant and Mr. Chott claim in their correspondences with Ms. Hunter that Mr. Chott took great care and exerted a great deal of time and effort in deciding whether to suspend her. <u>See</u> <u>e.g.,</u> Ex. 1 ("Any replies ... will be given full consider-ation"); Ex. 4 ("I have reviewed your written reply [and] carefully reviewed the rest of the entire record"); Ex. 7 ("I have carefully considered your written reply" ... "all factors raised" therein... and all "Douglas Factors").[6] Assuming the statements are true, Mr. Chott's decision was based on a thorough, time-intensive, and detailed assessment of Ms. Hunter's record, and the only reasonable inference to be drawn is that the work Mr. Chott performed in D.C., was extensive.[7]

---

[6] Insight into the full extent and scope of the deliberative process is illustrated by Mr. Chott's assertion that he complied with <u>Douglas v. Veterans Admin.</u>, 5 M.S.P.R. 280 (1981). <u>See</u> Ex. 7. There are 12 distinct Douglas factors supervisors should consider in assessing any alleged mis-conduct by a federal employee. While some of the factors assess the totality of the circumstances, such as the employee's disciplinary record and years of service, as many as six of the factors must be assessed in connection to the specific allegation of wrongdoing, such as the nature and seriousness of the offense and the mitigating circumstances sur-rounding the offense. Because Ms. Hunter's proposed suspension contained eight specifications, Mr. Chott should have considered as many as 54 different questions before he decided to suspend her.

[7] It would be an admission that USDA denied Ms. Hunter her due process rights should Defendant argue that Mr. Chott's review was merely "minimal and coincidental," <u>see</u> Mot. at 10, or he simply "rubber stamped" Ms. Anderson's actions. As it stands, Ms. Hunter has reason to believe her due process rights were violated when, on October 11, 2005, Mr. Chott requested that she resign in lieu of the 30-day suspension. <u>See</u> Ex. 4.

As a federal agency, USDA must assure that the management official responsible for issuing a suspension to an employee is not the same person who proposed the suspension in the first place. See Sullivan v. Dept. of Navy, 720 F.2d 1266, 1274 (Fed. Cir. 1983). However, it was Defendant's choice to select the D.C.-based Mr. Chott as the reviewing and deciding management official in this case, so it was Defendant's choice to expose itself to this Court's jurisdiction. Moreover, common sense dictates that the case should be heard in this Court because the most significant decision — the decision to suspend Ms. Hunter — was made in D.C.

**B.    The Motion to Dismiss Must Be Denied Because the Employment Records Relevant to Ms. Hunter's Suspension Are Maintained and Administered in the District of Columbia.**

Venue under Title VII is proper in "the judicial district in which the employment records relevant to such practice are maintained and administered." See 42 U.S.C. § 2000e5 (f)(3). It is evident from the facts of this case that "the employment records relevant to" Ms. Hunter's 30-day suspension were filed, maintained, and administered by Mr. Chott in D.C. Ms. Hunter's written reply to the proposed suspension was filed in D.C. In fact, she was expressly told to direct all such correspondence to Mr. Chott's office in D.C. See Ex. 1. Mr. Chott claims to

have "reviewed" and "carefully considered" the records in D.C.
See e.g., Exs. 1; 4; and 7.  Most importantly, the decision to
suspend Ms. Hunter was written by Mr. Chott, while he was
working at USDA headquarters in D.C. See Mot. at 10.  Based on
these facts, "common sense" suggests the records relevant to Mr.
Chott's decision to suspend Ms. Hunter are located in D.C., and
that D.C. is the proper venue for this case.[8]

Moreover, Defendant has not tried to assert any contrary
arguments.  Defendant has not demonstrated that the relevant
employment records are not maintained and administered by Mr.
Chott in D.C.  Instead, somewhat misleadingly, Defendant's
Motion states where Ms. Anderson maintains and keeps her records
and asserts that her recommendations were made in Maryland. See
Mot. at 11 (citing Anderson Decl., ¶¶ 6-8)).  Since these
records relate solely to the proposal to suspend, not the actual
suspension, the relevant question is where does Mr. Chott
maintain and administer his records.  Plaintiff contends, based
on common sense, that, like Ms. Anderson, Mr. Chott maintains

---

[8] The USDA Farm Service Agency has a second headquarters office in
Kansas City that is directed by and reports to the Agency's D.C.
headquarters.  Any personnel records located in the Kansas City office
are under the control of the D.C. headquarters.

and keeps his original files and records in his office in D.C.[9]

See also Jyachosky v. Winter, 2006 U.S. Dist. LEXIS 44399

(D.D.C. 2006) ("duplicate documents are insufficient to satisfy

Title VII's second venue provision").

**C.    The Motion to Dismiss Must Be Denied Because Defendant's Principal Office Is in the District of Columbia, and It Makes "Common Sense" to Hear All of Ms. Hunter's Claims in the District of Columbia.**

Defendant concedes that its principal office is located in

the District of Columbia. See Mot. at 11.  As such, while the

residual venue provision of Title VII does not explicitly apply

to this case, it lends support to Plaintiff's choice of venue.

See 42 U.S.C. § 2000e5(f)(3) ("if the respondent is not found

within any [other] district, such an action may be brought with-

in the judicial district respondent has his principal office").

Moreover, "common sense" dictates that this case should be

heard in D.C.  See Darby, 231 F.Supp.2d at 277.  As an initial

matter, the most significant decision Defendant made that harmed

Ms. Hunter — the decision to suspend her — was made in D.C.

Also, the main offending official — Mr. Chott — is located in

D.C., working in Defendant's principal office.  Because the key

---

[9] Also, as previously noted, it is likely that much of the documentation prepared by USDA relevant to Ms. Hunter's suspension was drafted by the Agency's attorneys and human resources personnel, who are located in the USDA's headquarters in D.C.

action — suspending Ms. Hunter for 30 days — and the deciding official are both located in D.C., this Court is the proper venue to hear this case. See Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983) (venue is not determined by whether action in another jurisdiction "may have had an impact on the plaintiff's situation").

Finally, if this Court were to decide that D.C. is not a proper venue, the primary claim of discrimination raised by Ms. Hunter may be diminished. Specifically, Defendant would be more likely to focus the attention of a court in Maryland away from the central adverse employment action, which took place in D.C. — the suspension — and focus the court's attention, instead, on less severe actions, which were taken exclusively on Maryland. It would be unconscionable to allow Defendant — and its D.C. actors — to escape responsibility for their actions in this way.

**D.  Plaintiff's Claims Should Not Be Transferred.**

In determining whether to transfer a case, the Court may consider: (1) Plaintiff's choice of forum, unless the balance of convenience strongly favors the Defendant; (2) Defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of Plaintiff and Defendant, but only to the extent that the

17

witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. See Airport Working Group of Orange County, Inc. v. U.S. Dep't of Defense, 226 F. Supp.2d 227 (D.D.C. 2002). Applying these factors to the case at hand, it is clear that the District of Columbia is not an inconvenient jurisdiction, and this case should not be transferred.

First, Plaintiff's choice of forum is D.C., and the federal government can hardly be said to suffer an inconvenience by having to defend a case that it initiated in the nation's capital. Second, while Defendant's choice of forum is not D.C., the adverse action took place here and the deciding office is located here. Third, the claim arouse in D.C. when Mr. Chott decided to suspend Ms. Hunter and made that decision in D.C. Fourth, neither party is inconvenienced by litigating this matter in DC because counsel for both parties are all located in D.C. Plaintiff's law firm has its only office in D.C. and the USDA Counsel's Office is also located in D.C. Fifth, some of the witnesses (including Defendant's primary witness, Mr. Chott) are located in D.C. and the remaining witnesses are only a 30-minute drive away from D.C., so would not be unavailable

for trial in this forum.[10]  Finally, Defendant previously ordered Ms. Hunter to direct records regarding her claims to D.C., demonstrating its capacity to access such proof here.

### IV. **CONCLUSION**

For all the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss or Transfer, and allow this case to proceed to discovery.  Oral argument is requested in this matter.

Respectfully submitted,


_____/s/_____
JOSEPH D. GEBHARDT
    (D.C. Bar No. 113894)
MARK A. DANN
    (D.C. Bar No. 484523)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

December 1, 2006          Attorneys for Plaintiff


LAW STUDENT ASSISTANT:
MACKENZIE B. COY

---

[10] The office in which Ms. Hunter and Ms. Anderson work is located in Columbia, MD, which is approximately 30 minutes to downtown D.C.

19

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Transfer, Exhibits 1-8, and a proposed Order was served this 1st day of December, 2006, via electronic case filing through the Court and facsimile, upon counsel for Defendant as follows:

Diane M. Sullivan, Esq.
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, DC 20530
Fax: (202) 514-8780


_____/s/_____
JOSEPH D. GEBHARDT