**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LENDER L. "PAT" HUNTER      )
                           )
          Plaintiff,       )
                           )
     v.                    )    Civil Action No. 06-0839(RWR)
                           )
MICHAEL O. JOHANNS         )
SECRETARY OF AGRICULTURE,  )
U.S. Department of Agriculture)
                           )
          Defendant.       )
                           )
_____)

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

**Introduction**

The plaintiff, an employee of the Farm Service Agency (FSA) of the U.S. Department of Agriculture (USDA) for the State of Maryland located in Columbia, Maryland, filed suit alleging that she was subjected to race discrimination, retaliation and a hostile work environment which ultimately resulted in a 30-day suspension. The defendant moved to transfer this case to the District Court in Maryland under the venue provisions of Title VII. See 42 U.S.C. 2000e.

Plaintiff opposes the motion to transfer on the grounds that the final decision on the proposed suspension was made by John W. Chott, Jr., Assistant Secretary for Field Operations, USDA, whose office is located in USDA Headquarters in Washington, D.C. Plaintiff's opposition chooses to ignore the location of the operative facts which gave rise to her claims of discrimination,

retaliation and a hostile work environment which culminated in the 30-day suspension.  While the final decision on the proposed suspension was made by the Assistant Secretary for Field Operation, FSA, in Washington, D.C. , all the operative facts underlying this action arose in Columbia, Maryland.  Venue properly lies in Maryland.

**Argument**

**I.    Venue under Title VII Lies in Maryland.**

The actions which form the basis of plaintiff's claims of discrimination, retaliation and a hostile work environment occurred in Columbia, Maryland.  Indeed, plaintiff is raising in this complaint "all her pending EEO complaint issues" in which she seeks redress from a hostile work environment (Amended Complaint, ¶ 6).  While the plaintiff also appeals the Merit System Protection Board's decision affirming plaintiff's 30-day suspension, the actions which gave rise to her suspension also occurred exclusively in Maryland (Id.).

Plaintiff's opposition appears to argue that the only significant employment practice - the 30-day suspension - was decided by Mr. Chott, the Assistant Secretary for Field Operations in Washington, D.C. and thus venue is proper in this district.  However, there would have been no proposed suspension for Mr. Chott to address unless plaintiff's supervisor, Elizabeth Anderson, the Maryland State Executive Director of FSA, proposed

2

the suspension.  The Plaintiff, Ms. Hunter, was the Executive
Officer for the Maryland State FSA Office.  The proposed
suspension was based on plaintiff's negligent performance of her
duties in Maryland and the failure to follow supervisory
instructions from the Director of the Maryland State FSA Office
(Amended Complaint, ¶ 9).

Plaintiff complains that this proposed suspension was
discriminatory "because Ms. Hunter's fellow white employees who
engaged in serious misconduct on the job were either not
disciplined or received minimal discipline (Amended Complaint, ¶¶
9, 22-25)(emphasis supplied).  The comparators listed by
plaintiff are: Ms. Linda Slaccum, the County Office Executive
Director for District II in the State of Maryland (Amended
Complaint, ¶ 24); Mr. Thomas Long, District Director for District
I in the State of Maryland (Amended Complaint, ¶ 25); and Mr.
Alan Young, Farm Loan Manager in the Agency for the Carroll
County, Maryland Office (Amended Complaint, ¶ 25).  They all work
in Maryland and their alleged misconduct of which plaintiff
complains was committed in Maryland.

Similarly, plaintiff's claims of retaliation and hostile
work environment all arise out of conduct or actions occurring in
Maryland (Exhibit 1).[1]  Plaintiff complains about Ms. Anderson's

_____

[1] Plaintiff's opposition ignores her retaliation and hostile
work environment claims.  While plaintiff explains at length the

proposed suspension; Ms. Anderson's failure to provide her with
support staff when Ms. Anderson provided it to others; Ms.
Anderson's requests for information from co-workers when
plaintiff was out of the office; Ms. Anderson's failure to
provide plaintiff with pertinent information; Ms. Anderson's
harassment of plaintiff during her military training; Ms.
Anderson's unfavorable comments on plaintiff's mid-year review;
Ms. Anderson's refusal to discuss work related information with
plaintiff; and Ms. Anderson's tolerance of co-workers sending
rude messages to the plaintiff (see Exhibits 1 and 2).  It is
clear that the gravaman of plaintiff's complaints arise from the
allege actions of Ms. Anderson, the Executive Director for
Maryland or her co-workers in Maryland (Exhibit 3).[2]

   Plaintiff argues that the most significant and only  adverse

_____

legal standard for an adverse action in a discrimination claim,
she fails to note that an adverse action is not a necessary
element of a hostile work environment claim. See Faragher v. City
of Boca Raton, 524 U.S. 775, 787-88 (1998).  In a retaliation
claim the standard requires that a plaintiff show a reasonable
employee would have found the challenged action materially
adverse, in a context which might well dissuade a reasonable
worker from making or supporting a charge of discrimination.
Burlington Northern & Santa Fe Railroad Co. v. White, 548 U.S.
126 S. Ct. 2405, 2425 (2006).

   [2] Plaintiff originally claimed that the proposed 30-day
suspension was discriminatory and constituted harassment on the
part of Ms. Anderson, but the EEO complaint based on this
proposed disciplinary action was withdrawn and pursued before the
EEOC (Plaintiff's Exhibit 3).  The decision of the MSPB is
appealed in this action (Amended Complaint, ¶ 2).

employment action occurred in the District of Columbia, namely the final decision to impose the 30-day suspension, citing Brown v. Brody, 199 F. 3d 446, 445 (D.C. Cir. 1999) and Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002). This argument again ignores the nature of her claims and the underlying facts which gave rise to them. As noted in her complaint, plaintiff seeks to raise all the issues in her underlying EEO complaints including numerous acts of discrimination, retaliation, and harassment culminating in a hostile work environment and a proposed suspension (Plaintiff's Exhibits 1-3). The locus of the retaliation and the hostile work environment was clearly Maryland.

Plaintiff's attempt to fashion her opposition in such a way as to infer a challenge only to the final decision made by Mr. John Chott, the Assistant Secretary for Field Operations, on the suspension proposed by Ms. Anderson, the Maryland District Director for FSA is a blatant attempt to manufacture venue is the District of Columbia. See Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996), citing Cameron v. Thornburgh, 983 F. 2d 253 (D.C. Cir. 1993).

In an effort to create a nexus with the District of Columbia beyond the final decision by Mr. Chott, plaintiff describes at length her interaction with Mr. Chott concerning her replies to the proposed suspension (Opp., pp. 8-12). Plaintiff's written

5

reply to the proposed suspension was presumably done at work
since it was on Maryland State FSA Office stationary (See
Plaintiff's Exhibit 2).  Plaintiff's second letter to Mr. Chott,
again written on FSA Maryland letterhead, complained about the
"continuously stressful working environment created by Ms.
Anderson," and details events occurring in the Maryland State
Office (See Plaintiff's Exhibit 3). See e.g. Donnell v. National
Guard Bureau, 568 f. Supp. 93, 94 (D.D.C. 1983)(while decisions
of individuals at the EEO Office and the Civilian Personnel
Office in the District of Columbia may have had an impact on
plaintiff's situation, the focus of the complaint occurred in
Virginia, which is the appropriate venue).  Plaintiff's only face
to face meeting with Mr. Chott in Washington, D.C. did not occur
until after his October 11, 2005 final decision and only at her
request (See Plaintiff's Exhibit 6).[3]

Plaintiff erroneously contends that the question is where
does Mr. Chott maintain and administer his records.  Plaintiff
misconstrues both the venue provisions of Title VII and Ms.
Anderson's declaration.  The venue provision of Title VII refers
to the judicial district in which the employment records relevant

---

[3] There was a telephone conversation between Mr. Chott and
plaintiff which addressed her reply to the proposed suspension.
Given the record in this case, it is a reasonable inference that
this conversation occurred during business hours when plaintiff
was in her office in Columbia, Maryland.

to such practices are maintained and administered. 42 U.S.C. §
2000e(f)(3).  Plaintiff's personnel file, performance appraisals,
and documents underlying the charges against her in the proposed
removal are located and maintained in Maryland (See Anderson
Decl., ¶¶ 6-8).  The emails, relocation requests and paperwork
for relocation are maintained in the Maryland State Office
(Plaintiff's Ex. 1, Specification, 1-4, 5).  The bills which were
not sent out originated from and are maintained in Maryland.  The
pertinent records supporting the 30-day suspension are maintained
in Maryland (see also Plaintiff's Ex. 1, pp. 287-290).  The
attachments to plaintiff's reply to the proposed suspension
provided to Mr. Chott originated in Maryland, and referred to
events occurring in the Maryland office.  These records are not
Mr. Chotts records.  He simply reviews these records for the
purpose of making a decision.  Moreover, any and all records
pertaining to plaintiff's harassment claims are in Maryland.
According to plaintiff, the discrimination culminated in a
proposed removal.

        Plaintiff also notes that she was represented by a
professional mediator at the "oral reply" and is presently
represented by a law firm whose sole office is located in the
District of Columbia.  However, the location of counsel is not a
factor to be considered under the factors set forth in 42 U.S.C.
§ 2000e-5(f) or 28 U.S.C. § 1404. See Armco Steele Co. L.P. v.

CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991)(location of counsel carries little weight, if any weight in § 1404(a) analysis); Geological Inst. of Am. v. Trang Thi-Dai Phan, 145 F. Supp. 2d 68, 47 (D.D.C. 2001); c.f. Ernest & Young, 775F. Supp. 144, 415 (D.D.C. 1991)(if such relatively minor concerns [convenience of counsel] were able to defeat a motion to transfer, then every enforcement action, regardless of where the underlying events took place would be entertained in the District simply because the Agency [headquarters] is located here).

Plaintiff then argues that the defendant ignores witnesses who are located outside of Maryland and points out that the District of Columbia is only 30 minutes from Columbia, Maryland. This argument misses the mark.  The overwhelming number of witnesses essential to the underlying facts of the case live and work in Maryland, including Ms. Anderson who allegedly created the hostile work environment as well as the comparators identified by plaintiff who work for FSA in Maryland.  Mr. Chott, on the other hand, does not have first hand knowledge of the underlying facts giving rise to plaintiff's claims of discrimination, retaliation, and hostile work environment.  He can only testify as to the reasons he decided to approve Ms. Anderson's proposed suspension.  Mr. Chott is available to testify, if necessary, in Maryland as well.  The District Court in Greenbelt is at best 30 minutes from the District of Columbia.

Finally, the most recent case cited by plaintiff and attached to her supplemental memorandum is clearly distinguishable. In <u>Kriesh v. Johanns</u>, Civil Action No. 05-2402, the defendant moved to dismiss and for summary judgment on those claims that were based on events in Washington, D.C. and to transfer Maryland claims which occurred in Maryland. A review of the decision reveals that plaintiff in <u>Kriesh</u> worked in Washington, D.C. until her allegedly discriminatory transfer to Riverdale, Maryland sometime in 1999. During her time in the District of Columbia, plaintiff alleges she was sexually assaulted in 1989 by an individual who was rehired without her knowledge and that she was transferred to a new office just doors away in 1998 when she was again subjected to harassment. Plaintiff was not selected for the Chief of Staff to the Administrator of APHS located in D.C. and was not paid salary bonuses for 1997, 1998 and 1999 while she worked in D.C. The Court denied defendant's dispositive motion and held that "because the Court has not dismissed the D.C. based claims, venue remains appropriate in this district." <u>Id</u>. The Court also found that plaintiff satisfied two of Title VII's possible venue tests, and that but for the alleged discriminatory transfer to Maryland she would be working in D.C. No such evidence is present here.

The plaintiff in the instant case has never worked in the District during the relevant time frame. None of her allegations

pertaining to her hostile work environment or retaliation claims occurred in the District of Columbia.  Here, the only connection to the District of Columbia is a final decision by Mr. Chott on a proposed suspension arising out of events occurring exclusively in Maryland.  The events forming the basis for the decision and the impact of the decision occurred in Maryland.[4]

### Conclusion

For the foregoing reason, the defendant's motion to transfer should be granted.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

---

[4] Even if venue were technically proper here under Title VII, which it is not, the Court can still transfer the case pursuant to 28 U.S.C. § 1404 for the convenience of the overwhelming number of witnesses.